IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 18-cv-02161-DDD

SANTOS JOSEPH TORRES,

    Applicant,

v.

DEAN WILLIAMS,[1] Executive Director, Colorado Department of Corrections,
MIKE ROMERO, Warden of Colorado Territorial Correctional Facility, and
PHILIP J. WEISER, the Attorney General of the State of Colorado,

    Respondents.

**ORDER DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS**

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. 1)[2] ("Application") filed *pro se* by Applicant Santos Joseph Torres. Applicant challenges convictions imposed on September 4, 2014, in El Paso County District Court, Colorado, case number 2012CR3060. Respondents filed an Answer (Doc. 26). Applicant has not filed a Reply (*see* Docket). After reviewing the record before the Court, including the

---

[1] Pursuant to Fed. R. Civ. P. 25(d), a public officer's successor is automatically substituted as a party. Thus, Dean Williams is substituted as the Colorado Department of Corrections Executive Director, and Philip J. Weiser is substituted as the Colorado Attorney General.

[2] "(Doc. 1)" identifies the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). This manner of identifying a document on the electronic docket is used throughout this order.

1

Application, Answer, and the state court record, the Court finds and concludes that the Application should be denied and the case dismissed with prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Colorado Court of Appeals described the factual background of Applicant's convictions as follows:

> Defendant and his girlfriend lured the victim to their motel room where they stabbed and strangled him to death. They then left in the victim's truck, crashing it three times. After the first crash, the other driver called 911 to report the second crash. The 911 operator asked if anyone was injured, and the other driver responded that her neck was hurt. Police found defendant the next day and transported him to the hospital for medical treatment. There he was medically cleared before being transferred to the police station where he was interviewed.
>
> At the interview, a detective read defendant his *Miranda* rights. He then asked defendant if he wished to speak with him. Defendant replied, "I don't mind, I wish I had a lawyer present." The detective asked defendant to clarify his statement to which defendant replied, "I want to talk to you." The detective repeated the *Miranda* advisement and asked defendant to confirm that he understood the meaning of each right. Defendant confirmed that he understood. After further questioning, defendant confessed to killing the victim.
>
> At trial, the jury found defendant guilty of one count of first degree murder (after deliberation and with intent), one count of first degree murder (felony murder), two counts of aggravated robbery, two counts of aggravated motor vehicle theft in the first degree, and three counts of accessory to a crime. The court also concluded defendant's five habitual criminal charges had been established beyond a reasonable doubt. It then merged defendant's felony murder count into his after deliberation murder count and entered judgment on all remaining convictions.

(Doc. 11-1 at 2-3). The Colorado Court of Appeals affirmed the judgment "on all convictions." (*Id.* at 12). The Colorado Supreme Court denied Applicant's Petition for Writ of Certiorari on August 21, 2017. (Doc. 11-3).

Applicant commenced this § 2254 action on August 23, 2018. (Doc. 1). In the Application, he alleges three claims: 1. "Miranda rule violation"; 2. ineffective assistance of trial counsel; and 3. innocence "of all state charges" due to insufficient evidence. (*See id.*). As relief, he requests that the sentence be vacated and immediate release. (*Id.* at 15).

On February 25, 2019, the Court entered an Order to Dismiss in Part and for State Court Record and for Answer. (Doc. 18). In the Order, the Court permitted Applicant to withdraw Claim Two and dismissed Claim Three in part. (*Id.* at 10). Claim One and Claim Three, to the extent Claim Three argues insufficient evidence regarding the aggravated motor vehicle theft charge, remain for adjudication on the merits. (*Id.*).

In the Answer, Respondents argue that § 2254(d) bars federal habeas corpus relief. (Doc. 26 at 14, 20). They contend that the Colorado Court of Appeals' determinations were supported by the record and not objectively unreasonable. (*See id.*). To date, Applicant has not filed a Reply in support of the Application. (*See* docket).

## II. STANDARD OF REVIEW

The Court must construe Applicant's filings liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court, however, cannot be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Applicant bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 829-30 (10th Cir. 2003). The threshold question the Court must answer under § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly

established federal law, that is the end of the Court's inquiry under § 2254(d)(1). *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407‑08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is objective. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A]

5

decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

6

> understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct, and Applicant bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

The Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review). The Court makes this harmless

7

error determination based upon a review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

In summary, under § 2254(d), "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion . . . , a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### III. MERITS OF APPLICANT'S REMAINING CLAIMS

#### A. *Claim One: Miranda Rights*

In Claim One, Applicant argues his *Miranda* rights were violated because, when talking to police, he said, "I wish I had a lawyer present." (Doc. 1 at 4-8). He asserts these "words should have been enough to invoke his right not to be questioned without an attorney present." (*Id.* at 7). Thus, he contends the trial court violated his Fifth and Fourteenth Amendment rights "by failing to suppress any and all statements made after the defendant's request for an attorney." (*Id.*).

Pursuant to the Fifth Amendment to the United States Constitution, a criminal suspect has the right not to be questioned while in custody without the assistance of a lawyer. *Miranda v. Arizona*, 384 U.S. 436, 467-72 (1966). "The *Miranda* Court formulated a warning that must be given to suspects before they can be subjected to custodial interrogation." *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010).

If an individual expresses a desire to deal with the police only through

8

counsel, the police may not subject the individual to further interrogation until counsel has been made available to him, unless the individual validly waives his right to counsel by initiating further communication with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). Evaluating such waiver requires two inquiries: first, "courts must determine whether the accused actually invoked his right to counsel," and second, "if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith v. Illinois*, 469 U.S. 91, 95 (1984) (citing *Edwards*, 451 U.S. at 484-86).

"Nothing in *Edwards* requires the provision of counsel to a suspect who consents to answer questions without the assistance of a lawyer." *Davis v. United States*, 512 U.S. 452, 460 (1994). "[I]f a suspect is 'indecisive in his request for counsel,' the officers need not always cease questioning." *Id.* (citation omitted). "If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Id.* at 461-62. A remark of, "[m]aybe I should talk to a lawyer," does not constitute an unambiguous request for counsel. *Id.* at 462. The suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459.

The Colorado Court of Appeals rejected Applicant's claim that "the trial court erred when it denied his motion to suppress his confession because he had

9

unambiguously requested an attorney." (Doc. 11-1 at 3). The court reasoned as follows:

A. Standard of Review and Applicable Law

When reviewing a district court's decision to suppress statements made by a defendant, the question before the court is a mixed issue of law and fact. *People v. Kutlak*, 2016 CO 1, ¶ 13 [footnote omitted]. Where sufficient evidence exists in the record to support the trial court's factual findings, we defer to those findings. *Id.* But "the legal effect of those facts constitutes a question of law subject to de novo review." *Id.*

Where the statements sought to be suppressed are audio- and video-recorded, and there are no disputed facts outside the recording controlling the suppression issue, we are in a similar position as the trial court to determine whether the statements should be suppressed. *Id.* Thus, we may undertake "an independent review of the audio or video recording to determine whether the statements were properly suppressed in light of the controlling law." *Id.* "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis v. United States*, 512 U.S. 452, 459 (1994).

In determining whether an accused has invoked his right to counsel, the proper inquiry under *Davis* is whether a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. *Kutlak*, ¶ 23. We assess whether a request for counsel is ambiguous by considering the totality of the circumstances, including such factors as the (1) interrogating officer's words; (2) accused's words referring to counsel; (3) officer's response to the accused's reference to counsel; (4) accused's speech patterns; (5) interrogating officer's demeanor and tone; (6) accused's behavior during interrogation; and (7) accused's youth, criminal history, background, nervousness or distress, and feelings of intimidation or powerlessness. *See id.* at ¶ 24.

B. Analysis

Defendant argues that the trial court should have suppressed his statements to the detective because the detective failed to stop

questioning him after he unambiguously requested a lawyer. Based on our review of the court's factual findings and our independent review of the video-recording, we conclude that under the totality of the circumstances, defendant's reference to a lawyer did not amount to an unambiguous request for counsel. *See Roque v. Allstate Ins. Co.*, 2012 COA 10, ¶ 7 (An appellate court "can affirm for any reason supported by the record, even reasons not decided by the trial court.").

After the detective read defendant his *Miranda* rights, the following exchange occurred:

> DETECTIVE: Having these rights in mind do you wish to talk to me now?
>
> DEFENDANT: I don't mind, I wish I had a lawyer present.
>
> DETECTIVE: You say you don't mind and you also say you wish to have a lawyer present, sort of telling me a little bit- you might wanna talk to me but you might wanna lawyer. Do you wanna chat with me or what would you like to do? I mean, there are some things I do wanna talk to you about, that's quite obvious, but that sort of decision is yours and not mine. So you have to decide whether or not you want to talk to me.
>
> DEFENDANT: Yeah, I'll talk to you.
>
> DETECTIVE: You'll talk to me? Now a moment ago when you said, you know, you might want a lawyer, would you rather talk to me . . . (inaudible).
>
> DEFENDANT: Yeah. I don't have nothing to hide.

Defendant was then given a *Miranda* rights form to sign. He signed the form but wrote that he was under duress. The detective asked defendant why he felt he was under duress. Defendant stated it was because he had not done anything wrong, but he did not mind talking to the detective. This comment led the detective to restate the *Miranda* rights. After confirming that he understood each right, defendant stated that he would speak with the detective.

In *Kutlak*, the supreme court held that "[u]nless the suspect actually requests an attorney, questioning may continue." *Kutlak*, ¶ 23

(citation omitted). In assessing whether a request for counsel is ambiguous to a reasonable officer, we consider the totality of the circumstances, including the factors provided in *Kutlak*. The following facts, found by the trial court and based on our independent review of the video, show that defendant's request for counsel was ambiguous for the following reasons:

- The detective testified that his use of language was intended to clarify his confusion regarding defendant's ambiguous request for counsel. He also repeated to defendant multiple times that he had a right to an attorney.
- After being read his *Miranda* rights, defendant was asked if he would like to speak with the officer. In response defendant stated, "I don't mind, I wish I had a lawyer present."
- The detective asked defendant to clarify his request for counsel, "[y]ou say you don't mind and you also say you wish to have a lawyer present, sort of telling me a little bit- you might wanna talk to me but you might wanna lawyer. Do you wanna chat with me or what would you like to do?" Defendant responded, "Yeah, I'll talk to you." The detective then asked, "You'll talk to me? Now a moment ago when you said, you know, you might want a lawyer, would you rather talk to me . . . ." Defendant replied, "Yeah. I don't have nothing to hide."
- The interview video shows that
    - defendant's tone of voice in the video was not assertive;
    - the detective's tone and demeanor was conversational and unintimidating; and
    - defendant did not appear under the influence or in any duress related to the detective's conduct despite writing he was under duress on the written *Miranda* waiver.
- The detective testified that "[defendant] was able to walk [into the interview room] under his own powers. He was able to walk to the restroom under his own powers. He wasn't falling against the walls or anything."
- Defendant was forty-nine years old and had been previously convicted of five felonies.
- Defendant was medically cleared before being transported

> - from the hospital to the police station. He was also given a restroom break and a cigarette break.
> - The detective collected basic information from defendant including his name, birthdate, and age. Defendant recalled his mother's and sister's full name, addresses, and telephone numbers.
> - Defendant wrote that he was under duress on his *Miranda* waiver. The detective stopped questioning and asked why defendant felt this way. After explaining he felt like he had done nothing wrong, defendant then said he did not mind talking to the detective.
> - The detective testified that, near the conclusion of the interview, defendant fell out of his chair but was later medically cleared.
>
> Based on the record, we conclude that the request for counsel was ambiguous. The trial court considered the totality of the circumstances, including the factors announced in *Kutlak*. We conclude the trial court did not err in denying defendant's motion to suppress [footnote omitted].

(Doc. 11-1 at 3-10).

In reaching its conclusion, the Colorado Court of Appeals relied on *People v. Kutlak*, 2016 CO 1, 364 P.3d 199 (Colo. 2016), which applied the standard set forth by the Supreme Court in *Davis v. United States*, 512 U.S. 452 (1994), also cited in the opinion on Applicant's direct appeal. In the Application, Applicant does not describe any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. (*See* Doc. 1); *see House*, 527 F.3d at 1018. Therefore, he fails to demonstrate the state court's determination with respect to Claim One is contrary to clearly established federal law under § 2254(d)(1).

Applicant also fails to demonstrate the state court's rejection of Claim One is based on an unreasonable determination of the facts in light of the evidence

presented under § 2254(d)(2). Pursuant to § 2254(e)(1) the Court presumes the state court's factual determinations regarding the circumstances surrounding the *Miranda* waiver are correct. (*See also* State Court Record, Doc. 24, People's Exhibit 1 (interview video recording), at 15:23-21:10 (*Miranda* advisement and discussion)). Applicant's conclusory assertion that his request for counsel was unambiguous is not clear and convincing evidence and does not rebut the presumption of correctness under § 2254(e)(1). He fails to persuade the Court that the state court's decision was based on an unreasonable determination of the facts.

Finally, Applicant fails to demonstrate the state court's decision is an unreasonable application of clearly established federal law under § 2254(d)(1). In light of the factual determinations regarding the *Miranda* waiver, Applicant cannot demonstrate the state court unreasonably concluded his constitutional rights were not violated. Applicant's statements, "I don't mind, I wish I had a lawyer present"; "Yeah, I'll talk to you"; and "Yeah. I don't have nothing to hide" were reasonably interpreted as not constituting an unambiguous request for counsel. Thus, under *Davis*, cessation of questioning was not required. *See* 512 U.S. at 459. For these reasons, Applicant is not entitled to relief with respect to Claim One.

### B. Claim Three: Insufficient Evidence

In Claim Three, Applicant alleges his Fifth and Fourteenth Amendment due process rights were violated because the evidentiary standard was insufficient, and he is "innocent of all state charges." (Doc. 1 at 12-13). As set forth in the Order to Dismiss in Part, to the extent Claim Three argues insufficient evidence with regard

14

to the aggravated motor vehicle theft charge, such claim remains for adjudication on the merits. (Doc. 18 at 5-7).

The proper standard for evaluating a claim challenging the sufficiency of the evidence is found in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*, the Supreme Court held "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* "Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 324, n.16).

To the extent an insufficient evidence claim involves an interpretation of state law, the state court's interpretation "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam). "Sufficiency of the evidence is a mixed question of law and fact." *Maynard*, 468 F.3d at 673. The Court must apply both § 2254(d)(1) and (d)(2) and "ask whether the facts are correct and whether the law was properly applied to the facts." *Id.*

The Colorado Court of Appeals reasoned as follows in rejecting Applicant's insufficient evidence claim:

Defendant contends that his first degree aggravated motor vehicle theft conviction based on the first crash must be vacated because there was insufficient evidence to show that another person was caused bodily injury. We disagree.

A. Standard of Review and Applicable Law

We review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain a conviction. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). In determining this, we use the substantial evidence test. That test requires us to determine whether the evidence, viewed as a whole, and in the light most favorable to the prosecution, is sufficient for a reasonable person to conclude that the defendant is guilty of the crimes charged beyond a reasonable doubt. *Id.*; *see also People v. Sprouse*, 983 P.2d 771, 777 (Colo. 1999). We must give the prosecution the benefit of every reasonable inference that may be fairly drawn from the evidence. *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005).

As pertinent here, a defendant commits first degree aggravated motor vehicle theft when he "knowingly obtains or exercises control over the motor vehicle of another without authorization or by threat or deception and . . . [c]auses bodily injury to another person while he or she is in the exercise of control of the motor vehicle." § 18-4- 409(2)(f), C.R.S. 2016. "'Bodily injury' means physical pain, illness, or any impairment of physical or mental condition." § 18-1- 901(3)(c), C.R.S. 2016.

B. Analysis

The evidence, when viewed in the light most favorable to the prosecution, was sufficient for a reasonable person to conclude defendant committed aggravated motor vehicle theft which caused bodily injury to another person. Defendant argues that "absolutely no evidence exists to support the mandatory element that [the other driver] suffered bodily injury." We disagree. In the 911 call, which was played at trial, the other driver stated twice that she received an injury to her neck as a result of the crash: (1) "my neck is hurt but not horribly" and (2) "[m]y neck is hurting a little bit from when she hit me."

(Doc. 11-1 at 10-13).

Applicant does not meet his burden of showing that the Colorado Court of

Appeals' determination is contrary to clearly established federal law under § 2254(d)(1). (*See* Doc. 1 at 12-13). In reaching its conclusion, the court relied on *Clark v. People*, 232 P.3d 1287 (Colo. 2010), which applied *Jackson v. Virginia*, 443 U.S. 307 (1979). Applicant does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. (*See* Doc. 1); *see also House*, 527 F.3d at 1018.

Applicant also fails to demonstrate the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). The Colorado Court of Appeals found that the evidence "was sufficient for a reasonable person to conclude defendant committed aggravated motor vehicle theft which caused bodily injury to another person." (Doc. 11-1 at 12). In reaching this conclusion, the court cited to the 911 call audio recording, played at trial, of the other driver's statements that her neck was hurt. (*See id.*). Pursuant to § 2254(e)(1), these factual findings are presumed correct, and Applicant has not rebutted that presumption by clear and convincing evidence. (*See also* State Court Record, Doc. 20, Trial Tr., Aug. 26, 2014, at p. 204 (admitting 911 call audio recording into evidence as People's Exhibit 247 and playing it for the jury); State Court Record, Doc. 24, People's Exhibit 247 (911 call audio recording), at 2:06, 4:09). Likewise, this Court is bound by the Colorado Court of Appeals' application of state law. *Bradshaw*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Finally, taking the evidence in the light most favorable to the prosecution as this Court must, the Court finds that the Colorado Court of Appeals did not engage in a contrary or unreasonable application of the *Jackson* standard to the facts presented at trial, under § 2254(d)(1). At the time of the 911 call, the other driver stated her neck was hurt. The Colorado Court of Appeals' conclusion that this met the bodily injury requirement was not objectively unreasonable. Therefore, Applicant is not entitled to relief with respect to Claim Three.

IV. **CONCLUSION**

Based on the above findings, the Court concludes that the Colorado Court of Appeals' decision was not contrary to or an unreasonable application of a clearly established rule of federal law or based on an unreasonable determination of the facts under 28 U.S.C. § 2254(d). Applicant's claims lack merit, and the § 2254 Application must be dismissed. Because the Court has determined that the § 2254 Application can be resolved based on the existing record, no evidentiary hearing is warranted, nor is it necessary to appoint counsel. *See Torres v. Mullin,* 317 F.3d 1145, 1161 (10th Cir. 2003); Fed. R. Governing Section 2254 Cases 8(a) and 8(c). This is not a case where the state court applied an improper legal standard and disputed issues of fact remain for the federal district court. *Cf. Milton v. Miller*, 744 F.3d 660, 673 (10th Cir. 2014) (remanding case to district court for evidentiary hearing where the state appellate court's decision did not survive scrutiny under § 2254(d)(1), and disputed issues of fact existed that precluded the court of appeals from completing a de novo review).

18

For the reasons stated herein, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. 1) is DENIED and this case is DISMISSED WITH PREJUDICE. It is further

**ORDERED** that that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED at Denver, Colorado, this 21st day of August, 2019.

BY THE COURT:

*s/Daniel D. Domenico*
Daniel D. Domenico
United States District Judge